Argued at Pendleton October 27, appeal dismissed December 21, 1920.

## RICHMOND *v.* WHITE.

(193 Pac. 1026.)

**Appeal and Error—Transfer of Property Adjudicated to Party Waived Right of Appeal.**

1. Where a suit for accounting by landlord against tenant renting on shares the effect of the court's decision was to give tenant credit for property which he purchased and paid for, but which landlord should have purchased, leaving title to the property in landlord, a transfer after oral decision, but before entry of decree by the landlord, of the leased premises, including the property adjudicated to landlord, waived the right to appeal, though it was also decided that the lease continued for several years longer, and the landlord's deed warranted against encumbrances, which warranty, however, was obviated by contemporaneous contract by grantees that tenant's occupancy was to be excluded from the operation of warranty.

From Gilliam: DAVID R. PARKER, Judge.

In Banc.

'Action by· J. A. Richmond against J. B. White and another. From the decree rendered, plaintiff appeals, and the named defendant moves to dismiss the appeal.      APPEAL DISMISSED.

For appellant there was a brief and an oral argument by *Mr. John W. Kaste.*

For respondents there was a brief over the names of *Mr. T. W. Weinke* and *Mr. G. E. Hamaker,* with an oral argument by *Mr. Weinke.*

HARRIS, J.—J. A. Richmond, the plaintiff, owned a wheat farm embracing 1,480 acres in Gilliam County. About October 1, 1917, S. G. Potter and the defendant J. B. White entered upon the farm as ten-

Waiver of right to appeal, note, 13 **Am. Dec.** 546.

ants of Richmond, with the understanding that, after first deducting sufficient wheat for feeding and seeding, Richmond should receive as rental one half of the wheat grown on the premises. At some time prior to the harvesting of the 1918 crop, White and Potter dissolved their interests and adjusted their affairs, and, with the consent of Richmond, Potter retired and left White as the sole tenant for 1918. White did not leave the farm in 1918, but remained on the premises and sowed and harvested a crop for 1919. On November 10, 1919, Richmond began this suit for an accounting against White and the Condon National Bank. The bank was nowise interested, except as a holder of $4,198.08, which it had received as proceeds of the sale of some of the wheat. White had hauled Richmond's share of the wheat to a warehouse, and, according to the contention of Richmond, White sent to Richmond the warehouse receipts for Richmond's share of the wheat. Richmond says that he then sent the receipts to the bank with directions to sell the wheat. The bank followed directions, sold the wheat, and received $4,198.08 for it. The bank alleges that, when it learned that there was some controversy between Richmond and White about these moneys, it executed a certificate of deposit payable to the order of Richmond and White; and the bank declared that it made no claim to the moneys, but simply held them for whomsoever might be entitled to receive them.

Richmond says in his complaint that in September, 1917, he leased the farm to White and Potter for one crop season ending October 1, 1918, with the further understanding that, if the premises were farmed in accordance with the agreement and in a manner satisfactory to Richmond, he would enter into a written agreement leasing the farm to White and Potter for

a term of four years. White asserted that Richmond leased the premises to White and Potter for a period of five years from January 1, 1918, and that it was also agreed that White and Potter should immediately enter into possession of the farm and that Richmond should, as soon as he could, prepare a writing evidencing the terms of the agreement.

Richmond asked in his complaint that White be required to account for the wheat raised in 1918 and 1919; for eight brood sows and twenty-five shoats alleged to have been killed by White; for pasturing and feeding certain stock; for barley raised in 1918; for failure to stack the straw; and for neglect to keep the buildings, fences, and equipment in repair.

White answered by claiming that he had accounted to Richmond for his full share of the crops. White's answer also contained a number of counterclaims. It was alleged by White that Richmond agreed "to furnish for the use of the defendant and said S. G. Potter on said farm" certain items of farm machinery and equipment specifically enumerated in the answer; that Richmond failed to furnish some of these items; and that because of such failure it became necessary for White to buy some of the items and to hire others at an expense of $4,601.35 in order to save the crop in 1918.

White was living on a farm in Washington owned by Richmond; and from there White moved to Richmond's farm in Gilliam County. White averred that he owned certain personal property on the Washington farm, and that he left this personal property on the Washington farm for Richmond with the understanding that Richmond would deliver like property on the Oregon farm for White; that Richmond failed

to keep his agreement to the damage of White in the sum of $662.

White also claimed that he was entitled to receive 25 cents per sack, or a total of $288.55 for hauling Richmond's share of the 1918 crop to the warehouse.

There was an additional further and separate answer and defense in which White asked that Richmond be required specifically to perform and to execute and deliver a writing evidencing the agreement.

The trial court found that Richmond made no claim to the personal property left by White on the Washington farm, and that White was the sole owner of that personal property, and hence no allowance was made to White on account of that property.

The court further found that the leasehold agreement was as alleged by White, and that the lease was for a term of five years from January 1, 1918; that Richmond agreed to furnish the items of farm machinery and equipment as alleged by White, but that, because of the failure of Richmond to keep his agreement in this respect, White had been obliged at his own expense to buy and hire such machinery and equipment. The trial court charged White with $7,214.79 as the value of Richmond's share of the wheat, and credited White with $6,332.90, leaving a balance of $881.89 due Richmond from White, and included among the credits were the items of machinery and equipment which White had purchased after Richmond had failed to furnish them.

The court rendered a personal money decree against the bank in favor of White for the sum of $3,316.19, together with costs and disbursements amounting to $46.10, and a like decree against the bank in favor of Richmond for the sum of $820.79, and allowed the bank $15 for its costs and disburse-

ments, thus disposing of all the moneys held by the bank as stakeholder.

Richmond appealed. White has moved to dismiss the appeal on the ground that Richmond has accepted the benefits of the decree and has ratified it.

The record shows that, when the parties concluded offering their evidence and rested, the circuit judge stated orally in open court, on March 18, 1920, that he was prepared to decide the case at once, but in order to give the parties an opportunity to adjust their differences he would postpone announcement of his decision until that evening. A written decision and decree were not filed, however, until April 27, 1920. Richmond took his initial step towards an appeal by serving notice of appeal on June 17, 1920.

On March 29, 1920, Richmond and his wife, by a warranty deed, conveyed the Gilliam County farm to W. S. Powell and Roy Powell. The deed contains a covenant that the premises "are free from all encumbrances, except a mortgage for $15,000."

Contemporaneously with the execution of the deed and as a part of the same transaction another writing was prepared, and it was signed by J. A. Richmond together with W. S. Powell and Roy Powell. This instrument contains a number of preliminary recitals. The first recital mentions the conveyance of the farm to the Powells. The second recital declares that White and Potter "are now in occupancy of said ranch claiming and asserting their right to possession thereto for an unexpired period." The third recital refers to "the decision of the Circuit Court" rendered "in the cause of" Richmond against White and the Condon National Bank. The fourth recital declares that "it is the intention of" Rich-

mond and his wife that the Powells "shall be vested with all the rights, title, claims, or interest which the said John A. Richmond has or claims to have in or to said premises, all personal property and also claims and rights of action against the said J. B. White arising from any cause whatsoever." These recitals are followed by the declaration that Richmond does "hereby sell, assign, and transfer unto the said W. S. Powell and Roy Powell the said claim of $2,000 above described due and owing to him from the said J. B. White, also any other cause or causes of action which the said John A. Richmond now has or claims to have against the said J. B. White by reason of said J. B. White's occupancy of said premises, and in consideration thereof the said W. S. Powell and Roy Powell have purchased said premises subject to the occupancy of the said J. B. White and S. G. Potter, and hereby agree to hold the said John A. Richmond and Florence S. Richmond harmless from any claim for damages by reason of the warranties contained and recited in their warranty deed other than as to title."

At some time in April, 1920, the Powells informed White that they had purchased the farm and personal property. White, after having been shown that the Powells were the owners of the premises and personal property, attorned to the Powells. The Powells made an affidavit in which they say they purchased from Richmond all the personal property on the farm, including the items which White had bought and the court had charged against Richmond. Attached to this affidavit is a copy of the bill of sale and a copy of the memorandum which the Powells say "is part and parcel of the" bill of sale. The memorandum itemizes the articles which the Powells aver they pur-

chased from Richmond; and among the items are those purchased by White and charged to Richmond in this suit.

On September 25, 1920, the Powells leased the farm to White for a term of two years, beginning with September 15, 1920, and ending September 15, 1922. Contemporaneously with the execution of this lease Powells gave to White a bill of sale for all of the personal property.

It will be remembered that the deed from Richmond to the Powells contains a covenant warranting the farm against all encumbrances, except a mortgage of $15,000. It will also be recalled that the trial court decreed that White had a lease on the farm for a term of five years. Richmond now argues that this appeal cannot be dismissed for the reason that the leasehold estate decreed by the trial court constitutes an encumbrance, and that he is entitled to maintain this appeal so as to free himself from liability on his covenant of warranty. The answer to this argument of the plaintiff is found in the writing which Richmond and the Powells signed as a part of the transaction; for it will be remembered that in that writing Powells purchased the farm "subject to the occupancy of" White and Potter, and that the Powells also expressly agreed to hold Richmond "harmless from any claim for damages by reason of the warranties contained and recited in their warranty deed other than as to title." Moreover, White's leasehold agreement with Richmond was extinguished when he entered into the agreement of September 25th with the Powells.

The decree of the trial court in effect said to Richmond:

"You did not furnish certain items which you agreed to furnish; and, because you did not furnish

them, White was obliged to buy them. Now, since
White did for you what you should have done for
yourself, you must reimburse White, and the items
purchased by White will therefore be treated as your
property. In other words, White had a right to buy
and charge to you what you should have furnished,
but did not furnish.''

One of the issues in this suit was whether White
was entitled to charge Richmond for the items pur-
chased by White. Richmond knew when he signed
the writing which dealt with the personal property,
what the court had orally decided, although the writ-
ten decision had not yet been filed; for there is a re-
cital in the writing expressly referring to the ''de-
cision.'' The writing states that ''it is the intention
of'' Richmond to vest all the right which Richmond
''has or claims to have in and to said premises, all
personal property, and also all claims and rights of
action against the said J. B. White arising from any
cause whatsoever.''

Richmond cannot complain that the lease decreed
by the court is an encumbrance for which he is lia-
ble, for the Powells expressly agreed that the occu-
pancy of White and Potter was to be excluded from the
operation of the warranty, and, moreover, the decreed
lease was extinguished when White leased directly
from the Powells, and, furthermore, Richmond cannot
now complain about that part of the decree which
relates to the personal property and to the claims
made by him against White, for he has submitted to
that part of the decree.

The appeal is dismissed.     APPEAL DISMISSED.